UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TERRY Q.,[1]

       Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION,[2]

       Defendant.

Case No. 3:20-cv-0210
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the Commissioner's denial of Plaintiff's application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. This matter is before the Court, with the consent of the parties, Joint Consent of the Parties (Doc. #7), on Plaintiff's Statement of Specific Errors (Doc. #12), the Acting Commissioner's Response (Doc. #13), Plaintiff's Reply (Doc. #14), and the Certified Administrative Record (Doc. #10). For the reasons that follow, the Commissioner's decision is affirmed and this action is dismissed.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Order 22-01.

2 Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I.        **PROCEDURAL HISTORY**

Plaintiff filed his application for benefits on June 21, 2017. (Doc. #10, PageID# 183–187). He alleges that he has been disabled since August 22, 2007,[3] as a result of both physical and mental impairments. *Id*. at PageID #247. The application was denied initially and on reconsideration, and Plaintiff requested a *de novo* hearing before an Administrative Law Judge ("ALJ"). On March 12, 2019, Plaintiff, who was represented by counsel, testified at an administrative hearing, as did a vocational expert. *Id*. at PageID #36–67. In a decision dated May 30, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time between his alleged disability onset date and the date of that decision. *Id*. at PageID #10–22. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 3, 2020. *Id*. at PageID #1–6.

II.       **LEGAL STANDARDS**

    **A. Standard of Review**

When reviewing a case under the Social Security Act, a court must affirm the Commissioner's decision if it is supported by substantial evidence and applied proper legal standards. *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 224-25 (6th Cir. 2019); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). *See also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence is "more than a mere scintilla. It means— and means only—such relevant evidence as a reasonable mind might accept as

---

[3] Plaintiff originally alleged disability beginning November 23, 2004 (Doc. #10, PageID# 183), but subsequently amended that date to August 23, 2007, his 50th birthday. *Id*. at PageID #41.

2

adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted).

Although the substantial evidence standard is "not high," *id.*, it is not meaningless. The reviewing court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

Following review of the entire record on appeal from a denial of benefits, a court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, and the

3

Commissioner bears the burden of proof at step five. *Baker v. Barnhart*, 182 F. App'x 497, 499 (6th Cir. 2006); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step two.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. If the plaintiff's RFC does not permit the performance of his past relevant work, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC and age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010. (Doc. #10, PageID #12). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. *Id.* at PageID #13.

At step two, the ALJ found that Plaintiff's depression, anxiety, and right knee degenerative disc disease were severe impairments. *Id.* The ALJ also found that Plaintiff's diagnosed hypertension was not a severe impairment. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id.*

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured of December 21, 2010, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could only stand and/or walk for four hours in an 8-hour workday. He could not climb ropes, ladders, or scaffolds. He also could not crawl; kneel; balance on uneven, moving, or narrow surfaces; or crouch through his date last insured of December 31, 2010. He was able to understand, remember, and carry out simple and detailed, but not complex, tasks in a routine work setting with occasional changes in work processes (unskilled and semi-skilled). He was able to occasionally interact with coworkers, supervisors, and the general public. He

5

>required the ability to stand every 30 minutes for five minutes while at the workstation and working through his date last insured of December 31, 2010.

*Id*. at PageID #14–15. The ALJ found that this RFC did not permit the performance of Plaintiff's past relevant work as a machine shop supervisor, electropainter, composite job of draw bench operator and forklift operator, composite job of grade checker and construction laborer (shoveling), and landscape laborer. *Id*. at PageID #20. However, the ALJ relied on the testimony of the vocational expert to find that a significant number of jobs could be performed by an individual with Plaintiff's vocational profile and RFC. *Id*. at PageID #21. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from his alleged disability onset date through December 31, 2010, the date on which he was last insured for disability insurance benefits. *Id*. at PageID #22.

Plaintiff contends that the ALJ erred by failing to find a severe lumbar impairment at step two of the sequential evaluation process and by failing to incorporate any corresponding limitations in the RFC determination, and also erred in evaluating the opinions of Plaintiff's treating physician and the medical evidence. Statement of Specific Errors (Doc. #12), Reply (Doc. #14). He asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings.*,* The Acting Commissioner takes the position that the decision should be affirmed in its entirety because the ALJ correctly applied the governing legal standards and considered the entire record, and because the administrative decision was supported by sufficient explanation and substantial evidence. Response (Doc. #13).

IV.     DISCUSSION

    A.  Lumbar Impairment

As noted above, the ALJ found that Plaintiff's severe impairments during the relevant time period consisted of depression, anxiety, and right knee degenerative disc disease. (Doc. #10, PageID #13). There was no mention of a lumbar impairment. Plaintiff argues that the ALJ erred in failing to include a lumbar impairment in the severe impairments at step two of the sequential evaluation process, and in failing to incorporate in the RFC limitations relating to that severe impairment.

The Commissioner's regulations define a "severe impairment" as one "which significantly limits [the claimant's] physical or mental ability to do basic work activities, ... ." 20 C.F.R. §404.1520(c).  Basic work activities include physical functions "such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  20 C.F.R. §404.1521(b)(1).  The United States Court of Appeals for the Sixth Circuit has held that an impairment is not severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Farris v. Secretary of Health and Human Services*, 773 F.2d 85, 89-90 (6th Cir. 1985), *quoting Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).  The burden is on the claimant to establish the existence of a severe impairment. *Bowen*, 482 U.S. 137.

However, the finding of a severe impairment at step two of the sequential analysis is only a threshold determination; where, as here, the ALJ has found at least one severe impairment, the sequential analysis will continue and the failure to include other severe impairments is not itself

7

reversible error. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). In this case, the ALJ found at step two that Plaintiff suffers severe impairments; the failure to find additional severe impairments at step two is therefore "legally irrelevant," *see McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008), so long as the ALJ continued the sequential analysis and considered Plaintiff's severe and non-severe impairments in determining Plaintiff's RFC. *See id.*

Plaintiff argues that, although the ALJ continued through the remaining steps of the sequential evaluation, "it is unclear whether the ALJ found any limitation to accommodate Plaintiff's lumbar impairments in her RFC finding. As such, it is impossible to conclude that the error falls within the parameters of *Maziarz* and does not require reversal." Statement of Errors (Doc. #12, PageID #628).

As an initial matter, the Court notes that the ALJ's RFC determination contains significant exertional limitations and Plaintiff does not even suggest what additional limitations should have been included had the ALJ found a severe lumbar impairment. More significant, however, is the fact that there is a paucity of evidence of a lumbar impairment prior to the lapse of Plaintiff's insured status on December 31, 2010. The only suggestion of a lumbar impairment appears in the January 23, 2019, Medical Assessment of Ability to Do Work-Related Activities (Physical) completed by Plaintiff's treating physician, William N. Ginn, M.D. (Doc. #10, PageID #492–496). In that assessment—completed more than eight years after the lapse of Plaintiff's insured status—Dr. Ginn stated that Plaintiff suffers from "spinal disease w/ disc derangement in neck & lumbar areas" and opined that Plaintiff's ability to engage in even sedentary work-related activities was precluded because of bilateral knee surgery to repair cartilage and "L5 disc rupture

8

x2." *Id*. at PageID #492, 494. Dr. Ginn also indicated that "there is a reasonable medical basis for believing that this claimant's impairments began prior to December 31, 2010." *Id*. at PageID #496.

The ALJ characterized Dr. Ginn's assessment as "not persuasive. The medical opinions are not consistent with the evidence of record for the relevant period." (Doc. #10, PageID #19). In this regard, the ALJ accurately summarized Dr. Ginn's treatment records during the claimed period of disability, *id*. at PageID #16–17, which refer to hypertension, depression, anxiety, and knee problems; no mention of a lumbar impairment appears in those records. *See id*. at PageID #320–343. The ALJ also summarized treatment records of Gregory Steven Goings, M.D., the orthopedic surgeon who performed the surgical repair of Plaintiff's medial meniscus tear of the right knee in October 2010. *Id*. at PageID #17. Those records likewise make no reference to a lumbar impairment. *Id*. at PageID #569.[4]

The Court therefore concludes that the ALJ's failure to include a lumbar impairment at step two of the sequential evaluation enjoys substantial support in the record and will not serve as a basis for reversal.

B.  Evaluation of Medical Opinions

Plaintiff also contends that the ALJ erred in evaluating Dr. Ginn's opinions and the medical evidence. The governing regulations[5] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from

---

[4] Dr. Goings also performed arthroscopic surgery on Plaintiff's left knee in November 2011—*i.e.*, almost one year after the lapse of Plaintiff's insured status. (Doc. #10, PageID #541). At his follow-up appointment after that procedure, Plaintiff declined a referral to physical therapy. *Id*. at PageID #543.

[5] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. § 40415913(a)(2017).

9

nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)-(5). With regard to two of these categories—*i.e.,* medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs, policies and evidentiary requirements." *Id.* § 404.1520c(c)(1)–(5). Of these five factors, supportability and consistency are the most important, and the ALJ must explain how these factors were considered. *Id.* § 404.1520c(b)(2). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). However, although an ALJ must explain how the factors of supportability and consistency were considered, *id.*, § 404.1520c(b)(2), the ALJ need not specifically use those terms in her analysis. *Howard H. v. Comm'r of Soc. Sec.,* 2022 WL 765217

10

*3 (S.D. Ohio Mar. 14, 2022); *Hardy v. Comm'r of Soc. Sec.*, 2021 WL 4059310, at *4 (S.D. Ohio. Sept. 7, 2021).

The medical evidence in this case consists of treatment records from Dr. Ginn and Dr. Goings, as well as the reviews of the administrative file conducted by state agency experts. Dr. Ginn's records establish that, during the claimed period of disability, Dr. Ginn treated Plaintiff for depression, anxiety, and hypertension, for which he prescribed medication and made no referral to additional treatment for those conditions. (Doc. #10, PageID #319–42). Dr. Ginn's treatment notes also indicate that Plaintiff reported that he had missed two days of work because of anxiety. *Id*. at PageID #332. In September 2010, Plaintiff reported injuries to his right knee during the prior month. (Doc. #10, PageID #340). Diagnostic testing established a tear of the medial meniscus of the right knee. The left knee was normal. *Id*. at PageID #513. Dr. Goings performed surgical repair of the tear on October 6, 2010. *Id.* at PageID #567. Dr. Goings' notes indicate that all extremities were "[w]ithin normal limits except the right leg which has medial joint line pain." *Id*. at PageID # 565, 567. Dr. Goings' notes reflect no further treatment until November 2018—*i.e.*, almost one year after the lapse of Plaintiff's insured status—for complaints of left knee pain that had begun two months prior. *Id*. at PageID #533. According to Dr. Goings, Plaintiff was "doing well" after the right knee scope. *Id*. at PageID #533. Diagnostic testing showed minimal bony spurring of the left patella and mild degenerative changes of the right knee "similar to the previous study." *Id* at PageID #537.

As noted above, Dr. Ginn's January 23, 2019, Medical Assessment of Ability to Do Work-Related Activities (Physical) (Doc. #10, PageID #492–496), reflects an extremely restricted ability to engage in work-related activities. Specifically, Dr. Ginn stated that, as a

11

result of bilateral knee surgery and ruptures of the L5 disc, Plaintiff could lift and carry no more than five pounds occasionally, stand and walk no more than a total of one hour in the workday, and sit no more than one hour without interruption for a total of two hours throughout a workday. *Id*. at PageID #492–93. Plaintiff could never climb, balance, stoop, crouch, kneel, or crawl; nor could he reach, handle, finger, feel, or push or pull. *Id.* at PageID #494. Exposure to heights, moving machinery, chemicals, temperature extremes, vibration, and humidity would "create [a] dangerous situation." *Id.* at PageID #495. According to Dr. Ginn, Plaintiff was unable to perform even sedentary work. *Id*.

Dr. Ginn also offered an opinion regarding Plaintiff's mental impairments. (Doc. #10, PageID #497–500). Although he offered no diagnosis, Dr. Ginn stated that Plaintiff suffers from poor memory, social withdrawal or isolation, recurrent panic attacks, anhedonia, paranoia, generalized persistent anxiety, and difficulty thinking or concentrating, among other signs and symptoms. *Id.* at PageID #497. According to Dr. Ginn, Plaintiff would be off task as a result of his problems 20% or more per week and would be absent from work more than three times per month. *Id.* The doctor rated Plaintiff's limitations to engage in most work-related activities from a mental standpoint as either "marked" or "extreme." *Id.* at PageID #498–99.

In August 2017, David Knierim, M.D., and Jennifer Swain, Psy.D., reviewed the record for the state agency and concluded that there was insufficient evidence to determine Plaintiff's physical and mental abilities during the period of his claimed disability. (Doc. #10, PageID #71, 72). In September 2017, Stephen Sutherland, M.D., and Karla Delcour, Ph.D., also reviewed the file for the state agency and affirmed those conclusions. *Id*. at PageID #79, 80.

The ALJ characterized the opinions of the state agency reviewers as "not persuasive" in

12

light of Plaintiff's right knee impairment and in light of Dr. Ginn's treatment of Plaintiff's anxiety and depression during the relevant time period. (Doc. #10, PageID # 17–18). The ALJ also found Dr. Ginn's opinions "not persuasive":

> The undersigned finds that the medical opinions from Dr. Ginn are not persuasive. The medical opinions are not consistent with the evidence of record for the relevant period. Dr. Ginn provided medical opinions about the relevant period, August 22, 2007 to December 31, 2010, some eight years later, January 23, 2017 at the behest of the claimant. There is no objective support for such drastic limitations. As documented throughout the decision, the claimant's complaints of right knee pain in September 2010 was [sic] quickly addressed with arthroscopic surgery in October 2010. Treatment notes from his orthopedic surgeon showed that all of the claimant's extremities were within normal limits except the right leg, which had medial joint line pain (1F/23 and 12F/5).
> Regarding the mental health medical opinion dated January 23, 2017, the medical evidence shows that that [sic] the claimant's complaints of anxiety and depression were addressed with medication provided by Dr. Ginn. There is no evidence that the claimant required additional psychological services during the relevant period (1F, 3F, and 8F). Moreover, mental health is outside the expertise of Dr. Ginn, a primary care physician. Accordingly, the undersigned finds that the limitations provided by Dr. Ginn are inconsistent with the medical evidence.

(Doc. #10, PageID #19).

This Court concludes that a fair reading of the ALJ's decision reflects a proper consideration of the supportability and consistency of the medical evidence and opinions. The ALJ accurately summarized Dr. Ginn's treatment records and found that there was no support in those records for the doctor's opinion that Plaintiff suffered a disabling physical or mental condition during his claimed period of disability. Moreover, the opinions articulated by Dr. Ginn in 2017 are, as the ALJ found, "inconsistent with the medical evidence." (Doc. #10, PageID # 19). Contrary to Plaintiff's assertion, the ALJ did not "set her own medical judgment against that of a treating medical source who presents competent evidence." Statement of Errors (Doc. #12, PageID #629). Rather, the ALJ's evaluation of the medical evidence and opinions was based on

13

the actual evidence—or lack of evidence—in the record before her.

In short, the Court concludes that the ALJ's decision complied with all applicable standards and enjoys substantial support in the record.

**WHEREUPON** the decision of the Commissioner of Social Security is therefore **AFFIRMED**. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


March 30, 2022                                            *s/ Norah McCann King*
                                                          Norah McCann King
                                                          United States Magistrate Judge